UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA, JR.,<br>    *Plaintiff*,<br>v.<br>NCB MANAGEMENT SERVICES, INC.,<br>    *Defendant*. | No. 3:23-cv-00221-MPS |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

This case arises from an attempt by Defendant NCB Management Services, Inc. ("NCB") to collect a debt from Plaintiff Wilfred Rivera, Jr. on behalf of Bank of America, N.A. ("Bank of America"). Rivera, proceeding *pro se*, filed this suit against NCB alleging violations of various provisions of the Fair Debt Collection Practices Act ("FDCPA") as well as several other federal laws and regulations. NCB now moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6) and for defective service of process Rule 12(b)(5). For the reasons stated below, I grant NCB's motion to dismiss under Rule 12(b)(6).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from Rivera's complaint as well as documents attached to his complaint.[1] ECF No. 1. These facts are accepted as true for the purpose of this motion.

On November 8, 2022, NCB sent a letter to Rivera, identifying itself as a debt collector and explaining that it was "trying to collect a debt that [Rivera] owe[s] to Bank of America, N.A." ECF No. 1 at 8. The notice also included information about the account at issue, including the account number (which ended in 0101) and the amount owed ($444.47). *See id*.

---

[1] "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996).

1

The notice further advised Rivera that he could "[c]**all or write to us by December 23, 2022, to dispute all or part of the debt**" and that "[i]f you do not, we will assume that our information is correct." *Id.* (emphasis in original).  The notice further explains that "[i]**f you write to us by December 23, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt." *Id.* (emphasis in original).  Finally, the notice states that NCB will provide Rivera with "**the name and address of the original creditor, if different from the current creditor**" if he requested that information. *Id.* (emphasis in original).

On November 20, 2020, Rivera mailed NCB requesting validation of his debt.[2] *Id.* at 9. On November 22, Rivera filed a complaint with the CFPB, in which he outlined his belief that NCB's collection attempt was in violation of various provisions of the FDCPA as well as several other federal laws. *Id.* at 10–16.  Rivera also sent several letters to NCB, largely restating his allegations against NCB and requesting that NCB settle the matter. *Id.* at 18–19, 22.

Rivera, proceeding *pro se*, filed this lawsuit on February 21, 2023, alleging violations of numerous provisions of the FDCPA as well as several other federal statutes and regulations, including the Truth in Lending Act ("TILA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Regulation B of the Equal Credit Opportunity Act, Title 16 C.F.R. § 433.3, the Federal Debt Collection Procedures Act of 1990, and Title 18 U.S.C. § 8. *Id.* at 4–6.

On March 22, NCB filed the pending motion to dismiss, arguing that Rivera's complaint should be dismissed for failure to state a claim under Rule 12(b)(6) and for defective service of process Rule 12(b)(5).  ECF No. 13; ECF No. 14 (Memorandum in Support).  Rivera filed a response in opposition to the motion, ECF No. 16, and NCB filed a reply, ECF No. 18.  Rivera

---

[2] Rivera attached this letter to his complaint.  ECF No. 1 at 9.  While the letter was addressed to "MANAGEMENT SERVICES INCORPORATED," Rivera seems to have mistakenly requested in the text of the letter that another debt collector, "GATESTONE & CO," validate the debt concerning another account presumably being collected upon.  *See id.* (requesting that "GATESTONE & CO" validate the debt for an account ending in 1010373322).

2

subsequently filed a document styled as another response to the motion to dismiss, which I will interpret as a surresponse.³  ECF No. 19.

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief."  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

---

³ Although surresponses are not granted as a matter of right, I will nevertheless consider this filing given Rivera's *pro se* status.  *See, e.g.*, *Marczeski v. Law*, 122 F. Supp. 2d 315, 318 n.2 (D. Conn. 2000) ("Were the plaintiff not *pro se*, the Court would have stricken all filings after the reply brief.  However, . . .given the latitude that must be afforded *pro se* litigants, the Court has allowed these filings.").

### III.   DISCUSSION

Rivera moves under both Rule 12(b)(6) and Rule 12(b)(5). Because I hold that Rivera's complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6), I do not consider NCB's motion under Rule 12(b)(5).

#### A.   Fair Debt Collection Practices Act ("FDCPA")

Rivera alleges that NCB has violated several provisions of the FDCPA, including: (1) engaging in prohibited communications concerning his debt under 15 U.S.C. § 1692b, (2) failing to get prior consent to contact him under 15 U.S.C. § 1692c, (3) using "obscene" language in collection attempts under § 1692d, (4) making false or misleading statements under § 1692e, (5) not providing sufficient validation of his debt under § 1692g, (6) not being authorized to bring a suit against him under § 1692i, and (7) furnishing deceptive forms under § 1692j.

When evaluating whether collection-related conduct is misleading under the FDCPA, courts apply the "least sophisticated consumer" standard. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "Under this standard, a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Pettaway v. Nat'l Recovery Sols.*, LLC, 955 F.3d 299, 304 (2d Cir. 2020) (per curiam) (internal quotation marks omitted). But the least sophisticated consumer standard "will not render debt collectors liable for bizarre or idiosyncratic interpretations of debt collection letters or unreasonable misinterpretations of collection notices." *Id.* (internal quotation marks omitted). In other words, "the least sophisticated consumer standard still preserves the concept of reasonableness." *Rubin v. Montefiore Med. Ctr.*, No. 20-2721-cv, 2021 WL 4538603, at *1 (2d Cir. Oct. 5, 2021) (internal quotation marks omitted).

4

As an initial matter, NCB argues that Rivera has failed to allege certain necessary elements of an FDCPA claim. NCB argues that Rivera does not allege that he is a consumer, as required under the act. *See, e.g.*, *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) ("[T]he FDCPA protects *consumers* from abusive debt collection practices . . . ." (citations omitted) (emphasis added)). But Rivera refers to himself as a "consumer" throughout his complaint, *see* ECF No. 1 at 4 (alleging that NCB has "no authority nor contract to collect any debt with I the consumer"), and so the allegations of the complaint are sufficient to claim plausibly that Rivera is a consumer under the FDCPA. *See* 15 U.S.C. § 1692a(3) ("The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt"). NCB also argues that Rivera fails to state that NCB is attempting to collect a "debt" as defined under the act. A "debt" under the FDCPA "means any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . . ." 15 U.S.C. § 1692a(5) (emphasis added). Thus, FDCPA actions must concern the "obligation[s] of a consumer," while "actions arising out of commercial debts" are not governed by the FDCPA. *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006). It is true that Rivera does not allege that the debt at issue here is a consumer debt. But given that NCB's November 8, 2022 letter is addressed to Rivera individually, as opposed to any name reflecting a business entity, and that I must "draw all reasonable inferences in favor of" Rivera, *Vietnam Ass'n for Victims of Agent Orange*, 517 F.3d at 115, I conclude that it is at least plausible that the debt is a consumer debt as defined by the FDCPA.

Having resolved these initial disputes, I must determine whether Rivera's allegations plausibly suggest that NCB violated any of the individual provisions of the FDCPA Rivera cites. I consider each alleged violation of the FDCPA in turn.

1. **Section 1692b**

Rivera alleges that NCB violated 15 U.S.C. § 1692b(2) because in its initial letters to him, NCB stated that Rivera owed a debt. ECF No. 1 at 4; *see also* ECF No. 1 at 8 ("We are trying to collect a debt that you owe to Bank of America, N.A."). Section 1692b prohibits certain types of communications between a debt collector and "any person *other than the consumer*," including communication indicating that the "consumer owes any debt." 15 U.S.C. §§ 1692b, 1692b(2) (emphasis added). But by the plain terms of the statute, § 1692b(2) does not cover a letter from a debt collector addressed to the consumer himself. Rivera does not allege that NCB communicated with a third party concerning his debt. Therefore, his § 1692b(2) claim must be dismissed.

2. **Section 1692c**

Rivera alleges that NCB violated 15 U.S.C. § 1692c(a) because it communicated with him without his permission or the permission of a court. ECF No. 1 at 5. That provision provides that a debt collector may not "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction . . . communicate with a consumer in connection with the collection of any debt" in three specific circumstances:

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . .;
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . . ; or

>  (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

15 U.S.C. § 1692c(a)

Rivera seems to misconstrue § 1692c(a) to prohibit a debt collector from communicating with him under any circumstance unless either he or a court gives the debt collector prior permission to do so. But § 1692c(a) only applies to communications in the three enumerated circumstances listed above. Rivera does not make any allegation that NCB attempted to communicate with him in one of the situations covered by § 1692c(a), and so his § 1692c(a) claims fail.

### 3. Section 1692d

Next, Rivera alleges that NCB violated 15 U.S.C. § 1692d(2) by using what he calls "obscene" language in its communications with him. ECF No. 1 at 4–6. Section 1692d(2) prohibits debt collectors from using "obscene or profane language" in connection with the collection of a debt. Rivera alleges that the following sentences are obscene: "NCB Management Services Incorporated is a debt collector. We are trying to collect a debt you owe to BANK OF AMERICA. We will use any information you give us to collect the debt." *Id.* at 6. They are not. "Courts have interpreted section 1692d(2) to prohibit profanity and obscenity, as well as offensive language that is akin to profanity or obscenity," such as name-calling, racial or ethnic slurs, and other similarly offensive derogatory remarks. *Monahan v. NRA Grp. L.L.C.*, No. 3:10-CV-00638, 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011) (citing cases). The complained-of language plainly does not qualify as profane or obscene. In fact, the FDCPA mandates the use of this language, *see* 15 U.S.C. § 1692e(11), and it is unclear how NCB or any other debt collector could collect a debt in accordance with the FDCPA without informing a

debtor that it is a debt collector attempting to collect a debt. This claim therefore fails as a matter of law, *see Monahan*, 2011 WL 3901877, at *2 ("A court may rule as a matter of law that particular conduct does not go so far as to violate section 1692d(2)."), and is dismissed.

### 4. Section 1692e

Rivera alleges that NCB made false or misleading statements in violation of 15 U.S.C. §§ 1692e(7), (10), (12), (14). I disagree.

Section 1692e(7) prohibits "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." Rivera does not make any allegation that NCB falsely represented or implied that he had committed a crime or other conduct in order to disgrace him. Rivera's § 1692e(7) claim is therefore dismissed.

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In support of this claims, Rivera states that "NCB is stating the collection of the alleged debt is on behalf of Bank Of America but the letter shows pay to NCB which is false and deceptive therefor a violation of 15 U.S.Code § 1692e(l0)." ECF No. 1 at 4. But Rivera does not explain how these alleged statements are false or deceptive. To the extent Rivera is alleging that NCB gave instructions to make any payment to NCB, rather than Bank of America, this does not suggest, by itself, that NCB was not acting on behalf of Bank of America; for example, NCB might have agreed with Bank of America to serve as the payee when collecting debts on its behalf. Rivera also suggests that NCB's letter was deceptive because the amount of the debt is stated as a "positive" balance, as opposed to a negative balance, "leading [him] to believe [that he would be] receiving a check." ECF No. 1 at 4. This interpretation is, however, "bizarre" and "idiosyncratic" given the clear language in NCB's communications that it was "trying to collect

8

a debt that you owe . . . ." *Id.* at 8.  Thus, his allegations do not support a plausible claim for relief under § 1692e(10), and I dismiss this claim.

Section 1692e(12) prohibits "[t]he false representation or implication that accounts have been turned over to innocent purchasers for value."  Rivera alleges that NCB has violated this provision "because they purchased the debt or are partnered with the alleged original creditor."  ECF No. 1 at 4.  As an initial matter, debt collectors do not violate § 1692e(12) by "partner[ing]" with creditors to collect debts on their behalf—that is simply what debt collectors do.  In addition, at no point does Rivera make any plausible factual allegation supporting his assertion that NCB took ownership of the debt.  This assertion is, in fact, refuted by the documents attached to the complaint, in which NCB clearly communicated that it is a debt collector and that it was "trying to collect a debt that you owe to Bank of America, N.A."  *Id.* at 8.  Because Rivera's allegations under § 1692e(12) are conclusory and contradicted by the documents attached to the complaint, I dismiss this claim.

Finally, § 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  Rivera does not allege that NCB Management Services, Inc. is not Defendant's "true name."  Instead, he suggests that NCB violated § 1692e(14) by stating that Rivera owed money to Bank of America.  ECF No. 1 at 4.  But § 1692e(14) does not prohibit debt collectors from stating the identity of the original creditor.  In fact, 15 U.S.C. § 1692g(a)(2) requires creditors to provide debtors with "the name of the creditor to whom the debt is owed."  Thus, Rivera does not state a plausible claim for relief under § 1692e(14), and I dismiss this claim.

5. **Section 1692g**

Next, Rivera alleges that NCB's debt validations and verifications were not sufficient under 15 U.S.C. § 1692g. Section 1692g(a) requires a debt collector to send the consumer a written notice containing the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Rivera has not pled facts plausibly showing that NCB violated § 1692g(a). NCB's notice contains all the information required by § 1692g(a). The letter lays out "the amount of the debt" ($444.47) and "the name of the creditor to whom the debt is owed" (Bank of America). *Id.* at 8. The letter also advises Rivera that he can "[c]**all or write to us by December 23, 2022, to dispute all or part of the debt**" and that "[i]f you do not, we will assume that our information is correct." *Id.* (emphasis in original). Further, the letter explains that "[i]**f you write to us by December 23, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt." *Id.* (emphasis in original). Finally, the letter states that NCB will provide Rivera with "**the name and address of the original creditor, if different from the current creditor**" if he requested that information. *Id.* (emphasis in original). Thus,

10

the validation notice attached to the complaint contains all the information required by § 1692g(a) and, therefore, does not plausibly violate § 1692g(a).

Rivera also does not state a plausible claim under § 1692g(b). Section 1692g(b) requires, in relevant part, that if a consumer disputes the debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Thus, § 1692g(b) essentially gives debt collectors two options after receiving notice of a dispute: they may either provide the requested validation and continue their collection efforts or cease all collection activity. *See Johnson v. Cap. Mgmt. Servs.*, No. 10-CV-467A, 2011 WL 6012509, at *7 (W.D.N.Y. Dec. 1, 2011).

Rivera apparently requested NCB to verify the alleged debt.[4] ECF No. 1 at 9. In response to this request, the documents attached to the complaint make clear that NCB ceased all collection activity. Responding to Rivera's CFPB complaint, NCB explained that:

> In response [to Rivera's request to verify the debt] . . . NCB immediately placed your file on hold and ceased all collection activity . . . . On the same day the complaint was received, NCB notified Bank of America of your complaint and continued to observe the cease on collection activity. On November 25, 2022, your account was returned to bank of America and closed in our offices. NCB is no longer servicing your account. Bank of America will respond directly to your debt validation request as NCB is no longer servicing your account.

---

[4] Although NCB does not address this issue, courts in this Circuit have explained that "under § 1692g(b), the consumer's right to verification is triggered only upon the debt collector's receipt of a written notice disputing the validity of the debt, *not a mere written request for verification*." *Nazmiyal v. Sunrise Credit Servs., Inc.*, No. 13-CV-0676, 2014 WL 524406, at *3 (E.D.N.Y. Feb. 7, 2014) (emphasis added). Here, Rivera only requested NCB to validate the debts. *See* ECF No. 1 at 9. While ordinarily, such a request would not be enough to trigger Rivera's right of verification, I must read Rivera's complaint "to raise the strongest arguments it suggests." *Walker*, 717 F.3d at 124 (internal quotation marks, citation, and alterations omitted). Here, the strongest argument Rivera's complaint suggests is that his requests for validation were premised on his dispute of the debt. This argument is supported by the fact that Rivera explicitly cited 15 U.S.C. § 1692g in his requests for validation, suggesting that he was seeking the protection that the statute provides. Thus, I conclude that, at this stage, Rivera's pleadings are sufficient to plausibly show that he disputed the debt, trigging the requirements of § 1692g(b).

11

ECF No. 1 at 12, 18; *see also id.* at 22 (letter from Rivera to NCB stating that "NCB has had 30 days to validate the alleged debt ACCORDING[] to the FDCPA and have FAILED to do so and have ONLY ceased their collection attemp[t]s." (emphasis in original)). Indeed, Rivera's own complaint acknowledges that NCB ceased collection activity. *Id.* at 2 ("NCB has not responded and validated any alleged debt [but] instead ceased collection practices . . . .").

A debt collector violates § 1692g(b) only if it continues collection activities after receiving a dispute without validating the debt. *See, e.g.*, *Thompson v. Ocwen Fin. Corp.*, No. 3:16-CV-01606 (JAM), 2018 WL 513720, at *3 n.4 (D. Conn. Jan. 23, 2018) ("§ 1692g(b) prohibits debt collection attempts after a debtor has given written notice that it disputes the debt or some portion thereof."). As such, Rivera has failed to state a plausible § 1692g(b) claim against NCB, and so I must dismiss this claim.

### 6. Section 1692i

Rivera next alleges that NCB violated 15 U.S.C. § 1692i(a)(2) because Rivera did not give NCB prior authority to sue him. ECF No. 1 at 5 ("[W]hen debt is not secured by real property, NCB can only sue if the contract authorizes the ability for the debt collector to sue the affiant."). But § 1692i(a)(2) does not require anything of the sort. Section 1692i is the venue provision of the FDCPA, and § 1692i(a)(2) merely explains the venue requirements for any suit brought by a debt collector against a consumer for collection actions that do not involve interests in real property. Rivera does not allege that NCB has sued him, much less that it sued him in the wrong venue. Therefore, I dismiss this claim.

### 7. Section 1692j

Finally, Rivera argues that NCB violated 15 U.S.C. § 1692j. ECF No. 1 at 4. Section 1692j(a) provides that:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

Congress passed this provision of the FDCPA to address a practice known as "flat-rating":

> A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letterhead of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters. This bill prohibits the practice of flat-rating because of its inherently deceptive nature.

*Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998) (quoting S. Rep. No. 95-382 (1977)).

Rivera does not plead any facts that NCB provided Bank of America with dunning letters; in fact, his complaint asserts that NCB itself, not Bank of America, sent the letters. *See* ECF No. 1 at 2 (accusing NCB of sending him "a debt letter"). Rivera does not plead any facts that NCB plausibly violated this provision of the FDCPA, and I therefore dismiss this claim.

### B.     Truth in Lending Act ("TILA")

Rivera also brings several claims under various provisions of TILA, including 15 U.S.C. §§ 1602, 1605, 1611, 1640, 1644, and 18 U.S.C. § 892. *See* ECF No. 1 at 4–6. NCB is not, however, subject to TILA's requirements because "TILA only regulates creditors," *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015), and NCB does not constitute a creditor under the act. In the case of "an open-end credit plan involving a credit card," as appears to be the case here, *see* ECF No. 1 at 5 (alleging TILA violations in connection with Rivera's "credit card"), TILA defines a "creditor" as "the card issuer and any person who honors the credit card and offers a discount which is a finance charge." 15 U.S.C. § 1602(g).

13

NCB does not fit within this definition. Bank of America, not NCB, is the card issuer here, and Rivera does not allege that NCB "honor[ed] the credit card and offer[ed] a discount which is a finance charge." Indeed, "courts have repeatedly concluded that a debt collector is not a 'creditor' subject to the requirements of the TILA." *Medrano v. Great Mercantile Agency, Inc.*, No. 1:17-cv-1392, 2019 WL 2164634, at *4 (E.D. Cal. May. 17, 2019) *findings and recommendations adopted by* 2019 WL 3366108, (E.D. Cal. June 17, 2019); *see also Peters v. Fin. Recovery Servs., Inc.*, 46 F. Supp. 3d 915, 918 (W.D. Mo. 2014) ("Defendant does not fit within [TILA's] definition [of creditor] and is not subject to TILA because Defendant is a debt collector and not the person to whom the debt was originally payable."); *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp.2d 986, 992 (N.D. Ill. 2002) ("[B]ecause defendants purchased delinquent accounts, i.e., debt on which defendants charged interest, and extended no credit privileges of their own, defendants are 'debt collectors' subject to the FDCPA, not 'creditors' subject to TILA."). Because NCB is not subject to TILA's requirements, these claims must also fail.

Moreover, many of the subsections of TILA that Rivera alleges NCB violated are criminal statutes. 15 U.S.C. §§ 1611, 1644, and 18 U.S.C. § 892 each lays out criminal liability under the act. Because "a private party . . . may not enforce criminal statutes," *McQuay v. Pelkey*, No. 3:16-cv-436, 2017 WL 2174403, at *3 (D. Conn. May. 17, 2017), Rivera cannot bring such claims against NCB.

For these reasons, I dismiss Rivera's TILA claims.

### C. Racketeer Influenced and Corrupt Organizations Act ("RICO")

Rivera alleges that NCB has committed racketeering in violation of RICO under 18 U.S.C. § 1962. *See* ECF No. 1 at 4. "To prove a violation of the RICO statute, a plaintiff must

14

plead that the violation occurred through the (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 97 (D. Conn. 2014) (internal quotation marks omitted).  A plaintiff must also demonstrate injury and causation. *See id.*  Moreover, RICO claims based on underlying allegations of fraud are subject to the heightened pleading standards set forth in Rule 9(b). *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("[A]ll allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").  Under this standard, "[i]n addition to alleging the particular details of a fraud, the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent." *Id.* at 179 (internal quotation marks and citation omitted) (emphasis in original).

Rivera's allegations are insufficient to plausibly plead a RICO claim.  Even if one were to liberally read Rivera's complaint to allege that NCB committed fraud as a RICO predicate, and even if one assumes his allegations of fraud meet the heightened pleading standards of Rule 9(b), he does not make any allegation that the predicate acts constitute a pattern of racketeering. Rivera's RICO claim is dismissible on this basis alone. *See Faryniarz v. Ramirez*, No. 3:13-CV-01064, 2015 WL 6872439, at *8 (D. Conn. Nov. 9, 2015) ("[A] pattern of racketeering must be adequately alleged in the complaint in order to state a RICO claim." (internal quotation marks omitted)).  Moreover, Rivera does not make any allegations as to what might constitute the RICO enterprise here.  A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which must be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  Rivera makes no allegation of any organization, whether formal or informal, that might establish a RICO enterprise. "Without allegations of a distinct RICO enterprise," Rivera's RICO claims must fail. *Maguire v.*

15

*Ameriprise Fin. Servs., LLC*, No. 3:22-CV-0128, 2022 WL 1718038, at *8 (D. Conn. May 27, 2022). For these reasons, I dismiss Rivera's RICO claim. *See Anderson v. Lowrey*, 667 F. Supp. 105, 111 (S.D.N.Y. 1987) (dismissing RICO claim because "Plaintiffs have failed to sustain their burden of pleading the 'pattern' and 'enterprise' elements of a RICO claim.").

### D. Regulation B of the Equal Credit Opportunity Act

Next, Rivera brings a passing claim under 12 C.F.R. § 1002, which is Regulation B of the Equal Credit Opportunity Act. His allegations under this regulation are sparse. He does not explain what specific provisions of the regulation NCB has allegedly violated, nor does he explain how NCB's actions ran afoul of the regulation. Though courts in this Circuit read *pro se* submissions liberally, "we do not create arguments out of whole cloth." *U.S. v. Bethea*, 388 F. App'x 20, 21 (2d Cir. 2010). Liberal construction "cannot save *pro se* litigants who do not present cognizable arguments," *Collins v. Blumenthal,* 581 F. Supp. 2d 289, 291 (D. Conn. 2008), and courts "need not engage in rank speculations to manufacture a federal claim for *pro se* plaintiffs," *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-cv-1470 CSH, 2014 WL 2475893, at *5 (D. Conn. June 3, 2014) (internal quotations omitted). Because Rivera's allegations under 12 C.F.R. § 1002 are conclusory, I must dismiss this claim.

### E. 16 C.F.R. § 433

Rivera also alleges that NCB violated 16 C.F.R. § 433.3. This regulation is an exemption to the Federal Trade Commission's Holder Rule, which requires that all consumer credit contracts contain a notice stating: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER

16

BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." 16 C.F.R. § 433.2 (emphasis in original). Section 433.3 exempts sellers "who ha[ve] taken or received an open end consumer credit contract before November 1, 1977." Rivera does not provide any explanation as to how the Holder Rule or the exemption to it apply here. Again, I will not fashion an argument for Rivera out of whole cloth. As such, I dismiss this claim.

### F.   18 U.S.C. § 8, 28 U.S.C. § 3002(1)(B), and the House Joint Resolution 192 of 1933

Rivera appears to allege that NCB has no right to collect the debts at issue here because, according to him, "all debt is the obligation of the Unites States." ECF No. 1 at 4. In support of this argument, he cites 18 U.S.C. § 8, which is a criminal statute that defines the term "obligation or other security of the United States," 28 U.S.C. § 3002(1)(B), which defines the term "Counsel for the United States" under the Federal Debt Collection Procedures Act, and House Joint Resolution 192 of 1933, which "was adopted by Congress to prohibit contracts that demand payment in gold" following the abandonment of the gold standard, *Sykes v. Shields*, No. 3:03-cv-2268 S, 2004 WL 1638237, at *2 (D. Conn. July 13, 2004). Stringing these laws together, Rivera asserts that the United States has assumed all consumer debts and that NCB "has no authority on behalf of the United [S]tates to collect . . . ." ECF No. 1 at 4.

As I have recently explained in two similar cases brought by Rivera, "[t]hese claims are legally and factually meritless." *Rivera v. Gatestone & Co.*, No. 3:23-cv-00035, 2023 WL 5530685, *6 (D. Conn. Aug. 28, 2023); *Rivera v. Zwicker & Assocs., P.C.*, No. 3:23-CV-00116-MPS, 2023 WL 6065175, at *10 (D. Conn. Sept. 18, 2023). Courts have uniformly rejected such claims, which are sometimes referred to as the "vapor money," "unlawful money," or "redemption" theories of debt. *See, e.g.*, *Osorio v. Connecticut*, No. 3:17-cv-1210, 2018 WL

17

1440178, at *5 (D. Conn. Mar. 22, 2018) (calling such theories "indisputably meritless" and dismissing them as frivolous); *Greene v. Pryce*, No. 15-cv-3527, 2015 WL 4987893, at *3 (E.D.N.Y. Aug. 18, 2015) ("Theories presented by redemptionists have been rejected by the courts as frivolous arguments."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010) ("[T]hese theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years."). Accordingly, I dismiss these claims.

## IV. CONCLUSION

For the reasons explained above, I GRANT NCB's motion to dismiss under Rule 12(b)(6). The case is DISMISSED without prejudice to the filing of an amended complaint that addresses the deficiencies identified herein within 30 days of the entry of this ruling. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       November 14, 2023